JUDGE CAPRONI

18 CV 8459

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————X

James H. Brady,

*Plaintiff,*

v.

Geoffrey S. Berman, United States Attorney
for the Southern District of New York,

*Defendant.*
—————————————————————X

Case No. _____

**COMPLAINT**

## COMPLAINT FOR INJUNCTIVE RELIEF

1.    Petitioner needs the protection of the United States Attorney for the
Southern District of New York, Hon. Geoffrey S. Berman, for two admitted crimes that
took place under color of law.  Without a Mandatory Injunction, Petitioner's guaranteed
constitutional rights for equal protection under the law will continue to be deprived.

2.    The first admitted crime was admitted to by NYS Supreme Court Justice
Shirley Kornreich on September 10, 2014 when she admitted that in her July 15, 2014
decision she deliberately took out all 40 words in the contract and replaced them with 70
different words that void what the contract and higher February 11, 2010 Appellate
Division decision say on their face.  She further does not deny that she issued $500,000
in sanctions to pay the attorneys and make me too weak to fight back against her
unlawful actions that were done for the sake of then politically connected.

1

3.      The second undisputed crime was committed by Supreme Court Justice

Barry Ostrager, Appellate Division, First Department judges Peter Tom, Barbara

Kapnick, Richard Andrias, and Troy Webber, and the NYS Court of Appeals

deliberately refused to apply the law to the admitted and proven facts that voided the

personal guarantees in another effort to retaliate and punish Petitioner for his years-long

effort of seeking to disclose their corrupt conduct.

4.      The best proof of this crime taking place can be seen in the Oral Argument

Archives on the First Department website for May 16, 2018, starting at 25:00 minutes.

The video clearly shows these judges sitting silent and refusing to apply the law to the

admitted facts that voided the personal guarantees.

5.      Mr. Berman and his Office were made aware of these undisputed crimes in

multiple letters and has refused to take any action on these admitted crimes.  The US

Attorney's Office has never answered a single letter pleading for his help.  Not only has

Mr. Berman not given me equal protection before the law, he has participated in the

crimes by refusing to investigate or acknowledge them.  Freedom of Information

requests have proven the depth of Mr. Berman's involvement.  Despite receiving over a

dozen letters, Mr. Berman and his Office has repeatedly denied Freedom of Information

requests, most recently in the September 13, 2018 letter stating they have no information

on Petitioner James H. Brady.

6.    These actions warrant a Mandatory Injunction requiring the US Attorney to protect Petitioner from the admitted crimes against him and a mandatory injunction enjoining the US Attorney to turn over the files on Petitioner in their possession.

## PARTIES

7.    Plaintiff James H. Brady resides at 510 Sicomac Ave, Wyckoff, NJ 07481, and is the former owner of the 12th Floor and Roof Unit at the commercial co-operative 450 West 31st Owners Corp.

8.    Geoofrey S. Berman is the United States Attorney for the Southern District of New York located at 86 Chambers Street, New York, NY 10007.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this action pursuant to the federal question arising out of the Fourteenth Amendment's Equal Protection Clause and under 28 U.S.C. §1983 as a civil action for deprivation of rights. The federal court has jurisdiction over civil rights complaints pursuant to 28 U.S.C. §1343 (a)(3). As a *pro se* petitioner, I ask the court to construe this pleading liberally when establishing whether it has met the federal requirement of the well-pleaded rule. *Hall v. Bellmon,* 935 F.2d. 1106 (1991).

10.    This court has supplemental jurisdiction over any claims that may be raised based on state law under 28 U.S.C. §1367, which provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

action with such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution," subject to the "common nucleus of

operative facts" established in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966).

11.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§1391(a) because Defendants and Plaintiff are located in this District, and the events,

actions or omissions giving rise to the claims herein occurred in the Southern District of

New York, and Defendants are subject to personal jurisdiction in this District at the time

this action is commenced.

## STATEMENT OF FACTS

12.     Petitioner seeks a Mandatory Injunction compeling Mr. Berman as United

States Attorney for the Southern District and his Office to protect Petitioner from the

consequences of these two admitted crimes, which have resulted in Petitioner having to

pay $2.3 million to the people who defrauded him, losing his business, and having his

life's savings destroyed.

## THE AIR RIGHTS SCANDAL

13.     The first scheme which Defendant ignored after having been told repeatedly

the details involved the rewritting of Plaintiff's contract by Justice Shirley Kornreich

after real estate developers were unable to obtain a Waiver from Plaintiff in 2012.

14.     Plaintiff had gone to court to enforce a February 11, 2010 Appellate

Division, First Department decision against the developers and co-operative Board who

4

executed a transaction they all agreed required a Waiver from Plaintiff, which is why

they asked him and his wife to sign a Waiver in 2012.

15.    The Seventh Paragraph Footnote to the Schedule of Units in the Amended

1980 Offering Plan from <u>450 West 31st Street</u> Owners Corp reads as follows:

> *"Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."*

16.    The Appellate Division, First Department, February 11, 2010 Decision

ended with the following words:

> *"Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."*

17.    Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the

above to read:

> "It has already been adjudged that while the owners of the unit *may* have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] *Brady v <u>450 W. 31st St.</u> Owner's Corp.*, 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building's development rights."]"

18.    Every word from the Offering Plan Contract and a higher court

determination was taken out and replaced by Judge Kornreich. Under the Appellate

Division decision, I have the right to the utilization of the premise's $70-90 million in

5

development rights.  Under Judge Kornreich's rewording, Petitioner is left with nothing

at all.

19.     New York State law is very clear that an unambiguous contract cannot be

rewritten by the courts:

> "When parties set down their agreement in a clear, complete document, their
> writing should be enforced according to its terms." *W.W.W. Assoc. v Giancontieri*,
> 77 NY2d 157, 162 10 [1990]. And "Courts may not by construction add or excise
> terms, nor distort the meaning of those used and thereby make a new contract for
> the parties under the guise of interpreting the writing." "In the absence of any
> ambiguity, we look solely to the language used by the parties to discern the
> contract's meaning." *Vermont Teddy Bear v. 538 Madison Realty Co.*, 308 AD2d
> 33 (2004).

20.     In the August 9, 2018 Decision in the case of *Craig B. Massey v.*

*Christopher V Brian, et al*., the Justices of the First Department made clear the law that

the rewriting of a contract by a lower court was unlawful.

> "An appellate court's resolution of an issue on a prior appeal constitutes the law
> of the case and is binding on the Supreme Court as well as on the appellate court
> ... [and] operates to foreclose re-examination of the question absent a showing of
> subsequent evidence or change of law" 107 AD3d 544 [1st Dept 2013].

21.     The case law above proves that 1) No court is permitted to rewrite a

contract to void what the contract says on its face, and 2) The case law makes clear a

lower Court cannot rewrite a higher appellate Court Decision but that is exactly what

happened to me and no one is taking any action to protect me from these unlawful acts.

**The Imposition of Sanctions Against Plaintiff was a Violation of the Constitution**

22.    After Plaintiff's contract was rewritten, Judge Kornreich sanctioned him

$500,000 in attorneys fees.  The imposition of sanctions violated not only New York

Law 22 N.Y.C.R.R. § 130-1.1, but was also of his Due Process Rights under the Fifth

Amendment to the U.S. Constitution.

23.    Justice Kornreich herself makes it clear why sanctions were unwarranted

and unlawful in this case based on the admissions she makes at the March 18, 2014 Oral

Arguments, during which Justice Kornreich made the following admissions:

> THE COURT:  How would you deal with the decision of the Court and say he has
> no development rights, he has no air rights, yet he has the right to build? What
> does that mean? (Transcript p. 9:17-20).

> THE COURT: The courts said that he has no air rights, but he has the right. But I
> think, perhaps, the courts didn't understand that air rights, FAR, all of that is
> probably the same things, development rights, so – (Transcript p.12:9-13).

> THE COURT: I don't know what you said. Nor do I know what the Court said.
> (Transcript p. 14:12-13)

> THE COURT: The decisions don't – don't address this, because, at least in this
> Court's mind, I don't see how you can build and build up without going into air
> rights or – you know, so I don't understand the decisions. I'm asking you for
> guidance. (Transcript p. 17:18-22).

> THE COURT: And the Appellate Division and lower court doesn't say, "You can
> only build to a certain height," they said "Yeah, he has the right to build up and
> out but he can't use the air rights," which is really an enigma. (Transcript, p. 27:3-
> 29:3).

> **THE COURT: I don't understand how you can build a structure on a roof if
> you have no air rights**. (Transcript p. 28:4-5).

> Mr. BRADY: So the correct reading it's an inconsistent decision. Please square
> the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

THE COURT:   – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof. <u>Perhaps that was his intent.</u> However, I can't rule that way because the Supreme Court already ruled and the Appellate Division already ruled that you do not own those air rights. (Tr. p. 54:11-20).

24.   In the July 15, 2014 decision, Justice Kornreich made the following acknowlegments regarding Plaintiff's claims that prove that sanctions were unlawfully imposed given the Court's own decision:

> "Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred." (July 15, 2014 decision, p.15).

> "Brady correctly notes that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions." (July 15, 2014 decision, p.19).

25.   Yet notwithstanding all of those admissions, in the July 15, 2014 decision, Justice Kornreich completely departed from all of her admissions and from her clear understanding of the case, and instead stated that Plaintiff's claims were frivolous and meritless, and imposed over $400,000 of sanctions:

> "It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases."

> "His misinterpretation of prior judgment, his feigned ignorance or the origin or the meaning of the phrase "transferable development rights," and his argument that a decision, which he appealed to no avail, is not binding are but a few examples of the frivolous arguments made in the instant actions."

"In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance."

"The trial court and the appellate court courts in the Prior Action have denied him such control. Undeterred, he has ignored these courts' rulings and brought these meritless actions, abusing the judicial process."

"This is a near perfect example of frivolous conduct that warrants defendants request for the imposition of sanctions."

26.　　New York law is clear that a court has discretion to award attorneys' fees and issue sanctions only in cases of frivolous conduct.

(a)　　The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part. 22 N.Y.C.R.R. §130-1.1

27.　　Under 22 N.Y.C.R.R. § 130-1.1, "conduct is frivolous if:"

(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
(3) it asserts material factual statements that are false.

In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues
the (1) circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct;
(2) whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.

28.　　It is clear and obvious given the Courts' numerous admissions regarding the

9

merits of Plaintiff's claims both at Oral Arguments and in the July 15, 2014 decision that

sanctions were not remotely warranted in this case.

29.    Imposing sanctions was a form of retaliation against Plaintiff for having

fought the Manhattan real estate developers, law firms and title insurance companies in

court.  It was retaliation for the exercise of Plaintiff's constitutional rights to seek redress

through the courts for the uncompensated seizure of his property rights after the parties

had asked for a Waiver.

30.    That the Offering Plan contract was a conveyence for the utilization of the

premise's development rights was perfectly understood by the parties to the contract.

Franklin Snitow, Extell's litigation counsel, stated in his "Affirmation for Defendants

Extell Dev. Corp.", et al., March 18, 2008, p. 2 ¶ 3 (Index 1.):

> The intent is evidenced in the decision of the original owner of the 12th floor unit
> to build an 1,800 square foot penthouse on the roof." **Thus, the intent of the
> Amendment is clear on its face."** (R: 310).

31.    Similarly, Stanley Kaufman, litigation attorney for the Co-op, stated in

"Defendant's Reply Memorandum of Law," April 14, 2008, p.5,

> **The clear intent** was to grant the 12th floor unit owner some latitude in adding
> **additional space, or structures**, so long as in doing so, the owner did not violate
> the local building code, **zoning regulations, or other ordinances**.

32.    And further:

> The clear and logical meaning of the added footnote number 7 of the Second
> Amendment was to grant 12th floor owner some latitude *in adding additional
> structures*, so long as in doing so, the owner did not endanger anyone else's health

or safety or violate the building Code, *zoning laws or any other laws or ordinances.*" (*Ibid.* p. 28).

33.    Stanley Kaufman, wrote in his "Affirmation in Opposition to Plaintiff's

Motion for Reargument":

> In the early 1980s, the sponsor's principal, Arthur Green, who at the time occupied the 12[th] floor, constructed a penthouse addition (an addition what was completely illegal at the time, but legalized years later by the co-op [R 759]). In fact, the Bradys alleged in their Amended Complaint that at a time when the Building had no available development rights, Arthur Green "exercised the rights of the 12[th] floor to build by constructing a 1,800 square foot penthouse on the roof…" (R67 at par. 23, 24). ***As evidenced by the sponsor's own conduct, paragraph 7 of the Second Amendment was probably designed to give the then owner of the 12[th] floor (which happened to be the sponsor's principal) the right to build additional space for himself, which he did;*** not to give the owner of the 12[th] floor unit the benefit of receiving enormously valuable development rights resulting many years later from some then completely unforeseeable future rezoning.

**Joseph Augustine, Attorney for the Co-op, Also Agreed the Contract Gave Petitioner the Right to Utilize the Premise's Development Rights at the March 18, 2014 Oral Arguments**

> THE COURT: -- which means you're going to have to commit the coop board to tell me:  What does Paragraph 7 mean?

> MR. AUGUSTINE:  It means he has the right to build structures once he submits a plan. And if those structures are permissible by law, such as Department of Buildings, and those plans do not pose a structural risk or any other risk to the building in order to -- for him to service the space that he has there, then the board would be inclined to approve it.

> THE COURT: But what I'm saying is he does have that right, though, under paragraph 7.

> MR. AUGUSTINE:  He has - - our understanding he has a right to build structures. That's what it says.  No one disagrees.  The courts all said the same thing, he has a right to build structures.

34.   Mr. Berman was even given testimony showing that Judge Kornreich did not dispute that she had falsified the prior decision.  At the September 10, 2014 Hearing for an OSC Plaintiff had filed, Justice Kornreich did not dispute any of Plaintiff's allegations, she just shrugged them off confidently:

> THE COURT:  So, I have read your papers, and let me say that I stand by my decision.  I think my decision is legally required.
>
> The same request, the same legal request, really, was made in another action in front of another judge, and I am bound by that decision.  It went all the way up to the Court of Appeals, so I stand by my previous decision.
>
> I am not going to stay enforcement of the sanctions.  I believe, I really believe that bringing the action over and over and over again both wastes the court's time, counsel's time, and your time, and it is frivolous.  (Transcript p. 4:16-26, 5:1-6).
>
> THE COURT:  So, I don't believe that there is any reason for me to recuse myself.  I don't believe that any decision I made previously was tainted in any way.  I believe this case is over at this point, so I am denying your application –
>
> BRADY:  It figures.
>
> THE COURT:  - for your order to show cause.
>
> BRADY:  That figures, your Honor.
>
> THE COURT:  Pardon?
>
> BRADY:  I said that figures.  Of course you would do that.  So why don't we address the fact that it's undisputed that you falsified the prior decisions.
>
> THE COURT:  That I falsified?
>
> BRADY:  You falsified the prior decisions.

THE COURT: Sir, at this point I would admonish you.

BRADY: I'd like it to be on the record, you took out the part, your Honor, that said that "pursuant to paragraph 7, plaintiff has, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the roof to the extent that may from time to time be permitted under applicable law." This Court took that out of its decision to square it against me.

THE COURT: Sir, you can say whatever you wish to say at this point. You've said it. At this point the record is closed. Your application is denied. Please step back.

BRADY: Thank you, your Honor. More evidence.

35.     Justice Kornreich knows that she can openly mock the victim of a crime she help commit with knowledge that Defendant Geoffrey Berman and the Office of the U.S. Attorney would do nothing about it and would continue to allow judicial criminal conduct across the Second Circuit. As shown below, Mr. Berman was informed repeatedly and in detail of what had occurred in both this and the following case and would not even assign Plaintiff a complaint number from his office. No one from Mr. Berman's office will even meet with Petitioner or discuss the case on the phone.

36.     This is why a Mandatory Injunction from the District Court is required.

## THE SECOND CRIME:

## IGS REALTY v JAMES BRADY, INDEX NO. 603561/2009

37.     The second scheme pertains to a personal guarantee case where I now must pay over $1.7 million dollars on September 5, 2018, to a Landlord that admittedly

destroyed my corporations three meeting hall businesses because the Judges of the State of New York deliberately refused to address the merger clause of my three corporate leases, and have refused to apply the law that voids personal guarantees to the admitted facts as part of a retaliation scheme against Petitioner.

38.     Plaintiff entered into three leases for entire floors in a building owned by IGS Realty, Philippe Ifrah Landlord, in 2003, including personal guarantees signed by Plaintiff and Merger Clause.  The contract is clear that the personal guarantees pertained to a building that was found after due diligence to be in "good and satisfactory" "as is a condition" at the time possession was taken.  It is also clear that any modification affecting the "as is" "good and satisfactory" condition of the building needed to be approved in writing condition' of the building needed to be agreed to in writing.

## THE LANDLORD'S ACTIONS VOIDED THE PERSONAL GUARANTEES

39.     It was admitted by the Landlord's attorney Robert Fass that Brady's corporations three "meeting hall" leases were signed in 2002 and 2003 only after a top to bottom due diligence proved the building was in "good and satisfactory" "as is condition," and that at that time the building complied with fire safety laws and the building had a valid Certificate of Occupancy.  Also shown below, Mr. Fass admits that the unlawwful acts of the Landlord resulted in the New York Department of Buildings refusal to issue any more Certificates of Occupancy to Brady's meeting halls as a result of the Landlord's admitted unlawful and hazardous illegal conversion of the building.

40.  Mr. Fass' June 25, 2015 closing arguments included the following

admissions of what the Landlord did after the leases were signed (R. 882):

> "So let's being at the beginning. In 2001 Mr. Ifrah placed an ad in the New York
> Times. He (Brady) goes to the space, checks it out, and puts a deposit down a
> check on one of the spaces. Then speaks with his father who has great experience
> in real estate who tells him this is in the special garment district for zoning, so he
> better check out whether his use is permitted.

> "So he puts a stop on the check and tells Mr. Ifrah he wants to do his due
> diligence, which he does. And he checks the whole building from top to bottom,
> legal and physical conditions, and concludes that everything is fine. The
> building's legal, the physical conditions are legal, and everything else is in good
> and satisfactory condition. So then he writes another check and rents the space.
> After that in the same year and the following year he rents two other spaces.

> "He also gets permits to construct meeting halls representing to the Building
> Department it's on the section that covers meeting halls, section of the regulation.
> And he gets public assembly permits also for meeting hall use. The last certificate
> of occupancy that he got expired in 2007."

41.  There was never a dispute at trial on the actions performed by the Landlord

after the leases were signed. The Landlord's own testimony and Department of

Buildings records show that IGS illegally converted the entire building to office space,

rendering Brady's leased spaces valueless as event meeting halls, which is how they

were defined in the leases, and therein also destroyed the three popular and profitable

businesses Petitioner had used as showcases to induce new tenants into the building.

42.  The Merger Clause of the leases reads as follows:

Paragraph 21, the title is No Representations by Owner.

> "Neither Owner nor Owner's agents have made any representations or
> promises with respect to the physical condition of the building, the land

upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other model of thing affecting or related to the demised premises or the building except as herein expressly set forth and no rights, easements, or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same as is on the date possession is tendered and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form are a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects.

All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought."

43.     On its face, the merger clause contract provision is clear that the guarantees

pertained to a building that was found, after due diligence to be in "good and

satisfactory" "as is a condition" at the time possession was taken.  It is also clear that

any modification affecting the "as is" "good and satisfactory" condition of the building

needed to be approved in writing condition' of the building needed to be agreed to in

writing.

## THE TESTIMONY AT TRIAL PROVED THE LANDLORD CONVERTED THE BUILDING TO ILLEGAL OFFICE SPACE, WHICH VOIDED THE PERSONAL GUARANTEES

### Tha Landlord's Lawyer Mr. Fass admitted the Landlord increased the risk under the leases after the Personal Guarantees were signed

"There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of finds to do it." (R. 888-889)

"Mr. Ifrah had to pay hundreds and later thousands of dollars in fines as the fines accumulated over time for the office space." (R. 885)

"So after 2007 he didn't have the certificate of occupancy of any sort." (R. 884)

<u>A review of Plaintiff's Reply, filed September 29, 2014, Plaintiff admits that Brady conducted due diligence, there were no illegal offices, and that the building was compliant with fire safety laws</u>:

> 4.   Denies the allegations of paragraph 41, 42 and 43, except admits that Brady conducted due diligence.
> 5.   Denies the allegations of paragraph 45, except admits that the building complied with fire safety laws and that there were no violations relating to office use in the building.

44.   New York Law states the following on what voids personal guarantees:

"A guaranty must be construed 'in the strictest manner' (White Rose Food v. Saleh, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform. An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See White Rose Food v Saleh, 99 NY2d 589 [2003]; Davimos v Halle, 35 AD3d 270 [2006.])."

"There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal. In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

## The Violations from the Department of Buildings Prove Conclusively that the Landlord Converted the Building to Illegal Office Space

45.   IGS Realty pleaded guilty to this violation that it illegally altered and changed the building.  The Landlord pleaded guilty to the charge that he:

*Altered/Changed Building Occupied without valid C of O TCO has expired.*
*Factory space occupied as office space at: 202, 204, 205, 206, 302, 304, 360, 380*
*& 400.  Remedy: Obtain a valid C of O or Vacant Building.*

46.     New York is clear that this voids the Personal Guarantees:

Guarantor cannot be held responsible for the failure of the principal to perform.
An alteration of the contract to which the guaranty applies will serve to discharge
the guarantor's obligation unless the guarantor has consented to the alteration. See
White Rose Food v Saleh, 99 NY2d 589 [2003]; Davimos v Halle, 35 AD3d 270
[2006.])."

47.     Applying the law to these admitted facts of the case means that the Personal

Guarantees were voided as a matter of law and public policy.

48.     The Landlord's only defense at trial for his admitted DOB violations and

illegal fire safety system was that a Certificate of Occupancy did "not matter," which is

false and was falsely believed by the Jury thanks to judge Ostrager's silence in the face

of overt lies:

"You know, the fact that somebody does something wrong does not mean that
you're hurt." (R. 892)

"He operated fine without the C of O and nothing was ever said." (R. 893)

"Having a Certificate of Occupancy makes no difference" (R. 885)

"So after 2007 he didn't have a certificate of occupancy of any sort and not once
did they throw him out." (R. 884)

"The law is not being enforced" (R. 886)

"Nobody cared" (R. 887)

"He said he had a Bible that he had to pull out with the certificate of occupancy,
and he said that was necessary to show to the inspector. Guess what, in 2008,

2009, he had nothing in his Bible, so having a C of O makes no difference. Inspections are very cursory, unless they see something dangerous, or somebody makes a complaint then they will go and issue a violation." (R. 885)

"<u>Mr. Ifrah has to pay the fines. No big deal. He's having inspections left and right, nobody's throwing him out.</u> Nobody's throwing out the office tenants. They are just fining Mr. Ifrah." (R. 886)

"Up until a certain time all of them told him what are you worried about this case, the law is not being enforced." (R. 886)

"So all Mr. Brady had to do was wait. Nobody forced him out. He decided to leave." (R. 887)

"Mr. Brady didn't have to leave. His corporation could still be there. He could still be operating." (R. 892)

"You will find out that no tenant in any of the allegedly illegal uses wherever forced out by the Department of Buildings or any other agency in the city or the state. They are allowed to stay until building is legalized. As a matter of fact, some of them are allowed to stay whether the building is legalized or not. So to claim Mr. Brady left because of something Mr. Ifrah did is silly" (R. 448)

"The Building Department would come in and issue violations certainly if people complained; but if nobody complained, there wasn't a problem." (R. 446)

## THE US ATTORNEY'S INACTION AND COMPLICITY WITH THE CRIME

49.    Petitioner sent an August 28, 2018 letter to the First Department telling

them "The May 16, 2018 Oral Argument Archives at 25:00 minutes from the Appellate

Division, First Department website shows the four of you sitting silent and refusing to

ask or answer a single question. The video proves the four of you refused to apply the

law to the admitted facts that voided the personal guarantees as a matter of law and

public policy.  Without your immediate action, I will be forced to pay over $1.7 million dollars to the scofflaw landlord on September 5, 2018."

50.    These two crimes were also reported to the FBI and NYAG practically each time a letter was sent to Defendant.  They too refused to even answer the letters and when asked to provide the files on Petitioner have stated they have nothing on record, which is untrue.

51.    Petitioner suffered a very serious crime and is being stonewalled by all law enforcement.  His family's life savings have been wipped out by having to pay the very people who defrauded him to begin with.  These crimes are not complicated or difficult to prove, which is why Petitioner has been met with silence: any investigation into these crimes proves them immediately in black and white.  Only this Court's intervention can enjoin Defendant to do his job and protect Petitioner.

---

## COUNT ONE
### Violation of Due Process Clause and Equal Protection of the Law Pursuant to the Fifth and Fourteenth Amendments

52.    Plaintiff restates and incorporates by reference each and every allegation of the preceding paragraphs.

53.    Defendant has violted Petitioner's constitutional Fifth and Fourteenth Amendment rights by knowingly allowing the execution of two crimes committed under color of law and refusing to protect Petitioner from these crimes.

20

54.    Defendant has acted in an arbitrary and capricious manner by subjecting Plaintiff to an unlawful judicial process and has refused to apply the law to the facts that have been admitted by all parties to the cases and proven conclusively in court.

55.    Defendant has violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution by adopting and enforcing inherently biased procedures, by permitting and condoning persistent and flagrant procedural abuses, and by allowing New York State judges to ignore the law or not apply the law to facts that been stipulated to by the parties.

## COUNT TWO

### Violation of 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

56.    Plaintiff restates and incorporates by reference each and every allegation of the preceding paragraphs.

57.    18 U.S.C § 242 states the following:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated

sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

58.    The Office of the United States Attorney for the Second District of New York has a Public Corruption Unit which is supposed to handle cases like the one presented in this Complaint.  As shown above, Plaintiff sent Mr. Berman countless letters detailing what had occurred to him, yet the U.S. Attorney and his Office did nothing about it.  The Public Corruption Unit's statement of purpose on Defendant's website reads as follows:

**Public Corruption**

The Public Corruption Unit works, in close partnership with the FBI and other federal, state and city investigative agencies to maintain and protect the integrity of all levels of government. The unit oversees the investigation and prosecution of corruption crimes committed by elected and appointed officials, government employees, and individuals and companies doing business with the city, state, and federal government. Corruption crimes investigated by the unit include bribery, embezzlement, and frauds committed against local, state, and federal government agencies.

59.    "Crimes committed by elected and appointed officials, government employees" is exactly what Plaintiff suffered and reported in detail to U.S. Attorney Geoffrey Berman, yet Petitioner's pleas have been ignored.  Only a Mandatory Injunction from this Court will compel Mr. Berman to perform his administrative duties.

## COUNT FOUR.

### Violation of 18 U.S.C. § 1346 – Honest Services Fraud

60.    Plaintiff restates and incorporates by reference each and every allegation of the preceding paragraphs.

61.    Defendant's failure to protect Petitioner and his total disregard for Petitioner's Constitutional rights is a violation of Honest Services Fraud pursuant to New York Law.

62.    "For the purposes of this chapter, the term *scheme or artifice to defraud* includes a scheme or artifice to deprive another of the intangible right of honest services."

63.    A scheme to defraud Petitioner is precisely what has occurred.  Mr. Berman is charged with protecting the constitutional rights of those in his southern district of New York jurisdiction.  His failure to perform even a cursory investigation into the crimes detailed in this Complaint is a form of Honest Services Fraud.

64.    **WHEREFORE,** Petitioner requestst a Mandatory Injunction compeling Mr. Berman as United States Attorney for the Southern District and his Office to protect Petitioner from the consequences of these two admitted crimes, which have resulted in Petitioner having to pay $2.3 million to the people who defrauded him, losing his business, and having his life's savings destroyed.

23

65.     Petitioner also requests a Freedom of Information requests pursuant to 5

U.S.C. § 552, for injunctive and other appropriate relief seeking the disclosure and

release of agency records improperly withheld from Plaintiff by the United States

Attorney's Office for the Southern District of New York; and any other relief this Court

deems just and proper.


DATE: September 17, 2018
        New York, NY.

TARA TOMASINI
Notary Public - State of New Jersey
My Commission Expires Apr 26, 2022

James Brady, *Pro se*
510 Sicomac Ave.
Wyckoff, NY 07481
bradyny@gmail.com