UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8/2/19
```

JAMES H. BRADY,

              Plaintiff,

-against-

GEOFFREY S. BERMAN, *United States Attorney for the Southern District of New York*,

              Defendant.

18-CV-8459 (VEC) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. VALERIE E. CAPRONI**

**BARBARA MOSES, United States Magistrate Judge.**

      Plaintiff James H. Brady, a serial litigant proceeding *pro se*, brings this action for injunctive relief against the United States Attorney for the Southern District of New York, seeking "protection" from two "admitted crimes that took place under the color of law." Both "admitted crimes" consist of unfavorable judicial decisions issued by the New York State courts in a series of real estate-related litigations that did not end in plaintiff's favor. In this action – one of seven he has brought in this jurisdiction alone – plaintiff complains that the United States Attorney's "failure to perform even a cursory investigation into the crimes" violates the Constitution and constitutes honest services fraud. *See* Compl. (Dkt. No. 1) ¶¶ 5, 53, 61, 63.

      Now before me for report and recommendation is defendant's motion (Dkt. No. 9) to dismiss this action for lack of subject matter jurisdiction, for failure to state a claim, and as barred by the filing injunction issued in *Brady v. Goldman*, 2017 WL 496083, at *2 (S.D.N.Y. Feb. 3, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018), *cert. denied,* 139 S. Ct. 329 (2018). For the reasons that follow, I respectfully recommend that this action be dismissed.

I.   **BACKGROUND**

A.   **The Air Rights Litigation**

The "first crime" for which plaintiff seeks "protection" is a July 15, 2014 decision issued

by the Hon. Shirley Kornreich of the New York Supreme Court, New York County. Compl. ¶¶ 2,

13-36. That decision came after seven years of state court litigation, beginning with a case

brought by plaintiff and his wife against the cooperative board of a building in which they owned

the penthouse, concerning the air rights above their unit. The history of that litigation was well-

summarized in *Brady v. Goldman* by the Hon. Sarah Netburn of this Court as follows:

> The subject matter of this dispute relates to a 2007 lawsuit between James and
> Jane Brady and 450 West 31st Owners Corp. ("Owners Corp."), the cooperative
> board for a property located at 450 West 31st Street, New York, NY. In 2007,
> Owners Corp. sought to sell the building's transferable development rights ("air
> rights") to an adjacent property owner. The Bradys, who owned a commercial
> cooperative unit on the 12th floor of the building, argued that an amended
> offering plan from 1980 granted them the air rights appurtenant to their
> apartment, and therefore sought to enjoin the sale in the Supreme Court, New
> York County.
>
> On July 2, 2008, Justice Marcy S. Friedman granted summary judgment for
> Owners Corp. and dismissed the complaint. The court found that Owners Corp.,
> not Brady, was the owner of the air rights and therefore could transfer such rights
> without seeking any waiver from Brady, though he did have the limited right "to
> construct or extend structures upon the roof" in accordance with applicable law.
> *Brady v. 450 West 31st Street Owners Corp.*, 2008 WL 2713579 (Sup. Ct. N.Y.
> Cnty. July 2, 2008). The Court denied Brady's motion for reargument. *Brady v.
> 450 West 31st Street Owners Corp.*, 2009 WL 803427 (Sup. Ct. N.Y. Cnty. March
> 13, 2009) ("It is well-settled that a right to maintain or construct roof-top
> structures may co-exist with the transfer of development rights."). This decision
> was unanimously affirmed by the Appellate Division. *Brady v. 450 West 31st
> Street Owners Corp.*, 894 N.Y.S.2d 416, 416 (1st Dep't 2010) (noting that the
> offering plan had "no express language giving plaintiffs ownership or veto
> power" over air rights and finding that they could only construct or extend
> structures "without the use of the building's development rights."). A judge of the
> Court of Appeals denied leave to appeal and reargument. 15 N.Y.3d 710 (2010);
> 16 N.Y.3d 731 (2011). Therefore, the decision regarding the ownership of 450
> West 31st Street's air rights was final as of January 11, 2011.

*Brady v. Goldman*, 2016 WL 8201788, at *1-2 (S.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 111749 (S.D.N.Y. Jan. 11, 2017), *aff'd,* 714 F. App'x 63 (2d Cir. 2018). Notwithstanding the entry of a final judgment against him, Brady continued to litigate the air rights issue:

> In 2013, he filed two additional cases in Supreme Court, New York County against, *inter alia*, Owners Corp. and its individual members, law firms who represented the co-op in the 2007 action, the prior owner from whom Brady had purchased his cooperative unit, the eventual purchaser of the air rights, the law firm representing the purchaser, a title company that issued a certificate in connection with the air rights transfer, and a subsequent purchaser of the adjoining property. *Brady v. 450 West 31st Street Owners Corp.*, Index No. 15779/2013; *Brady v. Katz*, Index No. 654226/2013.

*Brady v. Goldman*, 2016 WL 8201788, at *2. The July 15, 2014 decision that plaintiff challenges here was prompted by his conduct of the two cases he filed in 2013:

> These cases were consolidated before Justice Shirley Kornreich and dismissed on collateral estoppel grounds. *Brady v. 450 West 31st Street Owners Corp.*, [2014 N.Y. Misc. LEXIS 3193] (Sup. Ct. N.Y. Cnty. July 15, 2014) []. Justice Kornreich further stated that Brady's "dragging more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance" were "a near perfect example of frivolous conduct," and imposed attorneys' fees as a sanction. *Id.*

*Id*.

### B.   Federal Litigation Arising from the Air Rights Litigation

Since the dismissal of plaintiff's consolidated state cases on July 15, 2014, he has filed six new lawsuits, in this Court alone, on the premise that Justice Kornreich and other state court judges conspired, colluded, were corrupt, or committed crimes in connection with the air rights dispute. *See Brady v. New York State Commission on Judicial Conduct*, No. 15-CV-02264-WHP (S.D.N.Y.); *Brady v. Schneiderman*, No. 15-CV-09141-RA (S.D.N.Y.); *Brady v. Goldman*, No. 16-CV-02287-GBD-SN (S.D.N.Y.); *Brady v. Associated Press Telecom*, No. 16-CV-02693-

GBD-KNF (S.D.N.Y.); *Brady v. Difiore*, 19-CV-04380-ER (S.D.N.Y.).[1] In each action, Brady sought redress from a different party or parties for their alleged participation in – or failure to redress – the asserted judicial misconduct. Five of those six cases have been dismissed, either voluntarily or by court order. Only this action remains.

The outcomes of three of plaintiff's federal cases arising out of the air rights dispute are of particular relevance here. First, on July 13, 2016, the Hon. Ronnie Abrams of this Court dismissed plaintiff's action against the Attorney General of the State of New York – in which he sought an injunction compelling the Attorney General to investigate the alleged crimes committed by New York State judges – for lack of standing. Judge Abrams reasoned that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Brady v. Schneiderman*, 2016 WL 3906737, at *3 (S.D.N.Y. July 13, 2016) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), *aff'd*, 714 F. App'x 60 (2d Cir. 2018), and that the injuries plaintiff suffered – "namely, the effect of the various trial and appellate court decisions in his 2007 and 2013 lawsuits" – were not traceable to the Attorney General's "alleged failure to investigate those decisions or the individuals who made them." *Id.*

Second, on January 11, 2017, the Hon. George B. Daniels of this Court dismissed plaintiff's action against the lawyers and law firms that represented his adversaries in the state court litigation, and on February 3, 2017, issued an injunction prohibiting plaintiff from "filing new actions in the Southern District of New York that relate in any way to the cooperative's air rights appurtenant to his cooperative unit at 450 West 31st Street, New York, New York, or the

---

[1] The Court may take judicial notice of filings in plaintiff's prior state and federal lawsuits, not for the truth of the facts asserted therein but rather to establish the fact of such litigation and any filings related thereto. *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

conduct of any attorney, judicial officer, government official, or other third party in relation to such rights." *Brady v. Goldman*, 2017 WL 496083, at *2. Judge Daniels observed that plaintiff's case against the lawyers was (at that time) "one of three Plaintiff has initiated in the Southern District of New York in relation to his cooperative's air rights," that plaintiff had previously filed "a series of at least eight collateral attacks" in state court, and that no sanction other than a pre-suit injunction would be sufficient to deter plaintiff from filing further actions. *Id*. at *1-2.

Third, on May 14, 2019, notwithstanding the injunction issued in *Brady v. Goldman*, plaintiff filed a new action against Chief Judge Janet DiFiore and Associate Judge Michael J. Garcia of the New York Court of Appeals, seeking $225 million in treble RICO damages arising out of the air rights dispute. On May 22, 2019, the Hon. Edgardo Ramos of this Court dismissed that action, warning plaintiff "that if he continues to disregard the filing injunction [], the Court may impose additional sanctions on him, including monetary penalties." Order of Dismissal, *Brady v. Difiore*, No. 19-CV-4380-ER (S.D.N.Y. May 22, 2019), ECF No. 4.

## C.     The Personal Guarantee Litigation

The "second crime" for which plaintiff seeks "protection" is not a single judicial decision; rather, he alleges that judges at every level of the New York judiciary "deliberately refused to apply the law to the admitted and proven facts" when adjudicating a lawsuit brought against him by his former landlord, IGS Realty Co. (IGS Realty). Compl. ¶¶ 3, 37-51.

In *IGS Realty Co., L.P., d/b/a IGS Realty Co. v. James H. Brady*, No. 603561/09 (N.Y. Sup. Ct. New York County), the landlord sued on the personal guarantees that Brady executed in connection with three commercial lease agreements that he had entered into, through three closely-held corporations, for space in a building at 336 West 37th Street in Manhattan. Compl. ¶¶ 38-39. After a three-day trial before the Hon. Barry R. Ostrager of the New York Supreme Court, New York County, the jury "resolved all of the issues of fact in favor of [IGS Realty] and

5

against [Brady]." *IGS Realty v. Brady*, 2015 WL 10458771, at *1 (N.Y. Sup. Ct. New York County Aug. 25, 2015). On August 25, 2015, Justice Ostrager denied Brady's motion "for judgment notwithstanding the judgment and/or new trial." *Id.*

Brady appealed. The New York Supreme Court, Appellate Division, First Department, affirmed on April 13, 2017, and the New York Court of Appeals dismissed Brady's motion for leave to appeal on April 28, 2018. *IGS Realty Co., L.P. v. Brady*, 149 A.D.3d 524, 524, 52 N.Y.S.3d 320, 321 (N.Y. App. Div. 1st Dep't 2017), *leave to appeal dismissed,* 31 N.Y.3d 1036, 100 N.E.3d 837 (2018), *reargument denied,* 32 N.Y.3d 927, 108 N.E.3d 1018 (2018).

### D.     Federal Litigation Arising from the Personal Guarantee Litigation

After plaintiff exhausted his state court appeals in the personal guarantee litigation, he initiated a series of federal challenges to the state courts' adjudication of that dispute. Three such cases (including this one) have been filed in this District to date. On May 22, 2019, in his federal lawsuit against Chief Judge DiFiore and Associate Judge Garcia, plaintiff alleged in part that those judges participated in a "retaliation conspiracy fraud scheme" in which they "willfully and knowingly created unlawful debt against Plaintiff by intentionally refusing to adjudicate Plaintiff's defenses to Personal Guarantees" in *IGS Realty v. Brady*. Complaint, *Brady v. Difiore*, No. 19-CV-4380-ER (S.D.N.Y. May 22, 2019), ECF No. 1 ¶¶ 11, 47, 54, 112-123. Most recently, on July 30, 2019, plaintiff filed a new federal lawsuit in this District – this time against Justice Ostrager personally – seeking compensatory and punitive damages for Justice Ostrager's "participation" in a "retaliatory conspiracy" against plaintiff, as evidenced by his rulings in *IGS Realty v. Brady*. Complaint, *Brady v. Ostrager*, No. 19-CV-7122-KMK (S.D.N.Y. July 30, 2019), ECF No. 1 ¶¶ 25, 114-78.

### E.      Plaintiff's Allegations

In this action, plaintiff alleges that he "needs the protection of the United States Attorney for the Southern District of New York, Hon. Geoffrey S. Berman, for two admitted crimes that took place under color of law." Compl. ¶ 1. According to plaintiff, Justice Kornreich's July 15, 2014 ruling was a crime because "she deliberately took out all 40 words" in a contract concerning 450 West 31st Street and "replaced them with 70 different words that void what the contract and [an earlier Appellate Division decision] say on their face." *Id.* ¶ 2. Plaintiff alleges that he had "the right to the utilization of the premise's $70-90 million in developmental [air] rights," but that "[u]nder [Justice] Kornreich's rewording," he was "left with nothing at all." *Id.* ¶ 18. Plaintiff also contends that Justice Kornreich's imposition of sanctions against him in the amount of $500,000 "violated not only New York Law 22 N.Y.C.R.R. § 130-1.1, but was also of [sic] his Due Process Rights under the Fifth Amendment to the U.S. Constitution." *Id.* ¶ 22.

The "second undisputed crime," according to plaintiff, "was committed by Supreme Court Justice Barry Ostrager, Appellate Division, First Department judges Peter Tom, Barbara Kapnick, Richard Andrias, and Troy Webber, and the NYS Court of Appeals [when they] deliberately refused to apply the law to the admitted and proven facts" in *IGS Realty v. Brady*. Compl. ¶¶ 3, 37. As a result, plaintiff was required to "pay over $1.7 million dollars" to IGS Realty, which "destroyed [his] three meeting hall businesses because the Judges of the State of New York deliberately refused to address the merger clause of [his] three corporate leases, and have refused to apply the law that voids personal guarantees to the admitted facts as part of a retaliation scheme against [plaintiff]." *Id.* ¶ 37.

Plaintiff alleges that "Mr. Berman and his Office were made aware of these undisputed crimes in multiple letters [but] refused to take any action on these admitted crimes," Compl. ¶ 5,

thus "participat[ing] in the crimes by refusing to investigate or acknowledge them." *Id.* In addition, plaintiff alleges, the United States Attorney and his Office have "repeatedly denied Freedom of Information requests," such as by stating, in a September 13, 2018 letter, that "they have no information on Petitioner James H. Brady." *Id.*

In Count One, plaintiff asserts a claim for violation of his rights under the Due Process and Equal Protection Clauses. Compl. ¶¶ 52-55. In Count Two, he alleges that defendant is in violation of 18 U.S.C. § 242 (deprivation of rights under color of law). *Id.* ¶¶ 56-59. In Count Four,[2] he asserts a claim for violation of 18 U.S.C. § 1346 (honest services fraud). *Id.* ¶¶ 60-63. Plaintiff seeks "a Mandatory Injunction compel[l]ing Mr. Berman as United States Attorney for the Southern District and his Office to protect [plaintiff] from the consequences of these two admitted crimes." *Id.* ¶ 64. He also requests "injunctive and other appropriate relief seeking the disclosure and release of agency records improperly withheld from Plaintiff." *Id.* ¶ 65.

## II.   ANALYSIS

### A.   Plaintiff Lacks Standing to Sue the United States Attorney for a Mandatory Injunction

As Judge Abrams held in *Brady v. Schneiderman*, "Plaintiff lacks standing to seek an injunction compelling Defendant to investigate specific individuals for specific conduct." 2016 WL 3906737, at *2.

To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected

---

[2] There is no Count Three.

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Brady v. Schneiderman*, 2016 WL 3906737, at *2 (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548).

The Supreme Court has consistently held "that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.,* 410 U.S. at 619. That is so because a crime victim who "sues to force the prosecution of the person who did her wrong was injured by that person, not by the failure to prosecute that person." *Fiorito v. DiFiore,* 2014 WL 4928979, at *3 (S.D.N.Y. Oct. 2, 2014). "Nor does a private citizen 'have standing to challenge the [prosecutor's] failure to investigate.'" *Brady v. Schneiderman*, 2016 WL 3906737, at *3 (quoting *Fiorito*, 2014 WL 4928979, at *3, and collecting cases).

Plaintiff argues that he nonetheless has standing because he "seeks his protection pursuant to the law, not the prosecution of anyone." Opp. Mem. (Dkt. No. 18) at 2. *See also* Compl. ¶ 64 ("[Plaintiff] requests[] a Mandatory Injunction compel[l]ing Mr. Berman as United States Attorney for the Southern District and his Office to protect [plaintiff] from the consequences of these two admitted crimes."). This is a distinction without a difference. The Complaint makes it clear that plaintiff seeks to force the United States Attorney to investigate the alleged crimes. *See* Compl. ¶ 5 (asserting that defendant has "participated in the crimes by refusing to investigate or acknowledge them); *id.* ¶ 35 (complaining that "no one from Mr. Berman's office will even meet with Petitioner [sic] or discuss the case on the phone"); *id.* ¶ 51 ("[A]ny investigation into these crimes proves them immediately in black and white. Only this Court's intervention can enjoin Defendant to do his job and protect Petitioner."); *id.* ¶¶ 58-59 (noting that the public corruption unit within the U.S. Attorney's Office "oversees the

investigation and prosecution of corruption crimes" and asserting that "[o]nly a Mandatory Injunction from this Court will compel Mr. Berman to perform his administrative duties"); *id.* ¶ 63 (defendant's "failure to perform even a cursory investigation into the crimes detailed in this Complaint is a form of Honest Services Fraud"). Plaintiff's addition of the word "protection" cannot obscure the substance of the relief he seeks, especially given that he does not specify what "protection" he seeks *other than* the investigation and/or prosecution of the judges who ruled against him. Nor does he explain how the "protection" of the defendant could redress an injury "fairly traceable to the challenged conduct *of the defendant.*" *Spokeo, Inc.*, 136 S. Ct. at 1547 (emphasis added).

Because plaintiff "lacks standing to compel Defendant to investigate and/or prosecute the state court justices and judges who decided his prior lawsuits," *Brady v. Schneiderman*, 2016 WL 3906737, at *2, this Court lacks subject matter jurisdiction to consider those requests. I therefore recommend that Counts One, Two and Four be dismissed pursuant to Rule 12(b)(1).[3]

### B.  Plaintiff Fails to State a FOIA Claim

Although plaintiff's three numbered claims do not include any reference to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, he complains that defendant improperly "denied" his FOIA requests and "withheld" records that should have been produced pursuant to that statute, Compl. ¶ 5, and requests "injunctive and other appropriate relief seeking the disclosure and release of agency records improperly withheld from Plaintiff by the United States Attorney's

---

[3] Because plaintiff lacks standing to compel defendant to investigate or prosecute the judges who ruled against him in state court, this Court need not reach the merits of his constitutional claims or those brought pursuant 18 U.S.C. §§ 242 and 1346. If I were to reach the merits of those claims, however, I would recommend that they be dismissed for the reasons set forth in defendant's briefs. *See* Def. Mem. (Dkt. No. 10) at 7-9; Def. Reply. Mem. (Dkt. No. 21) at 3-4.

Office for the Southern District of New York," and well as "any other relief this Court deems just and proper." *Id.* ¶ 65

To the extent plaintiff asserts a claim under FOIA, that claim fails.

Under § 552, a district court may "enjoin [a federal] agency from withholding agency records and [] order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). "In order to state a claim under FOIA, however, a plaintiff must allege that a request for records was made to an agency and the agency improperly withheld records responsive to this request." *Korsinsky v. Godici*, 2005 WL 2312886, at *7 (S.D.N.Y. Sept. 22, 2005), *aff'd sub nom. Korsinsky v. Dudas*, 227 F. App'x 891 (Fed. Cir. 2007). Moreover, "[t]o withstand dismissal, a FOIA plaintiff must plead in his complaint that he has exhausted his administrative remedies." *Bida v. Russo*, 2014 WL 1392338, at *2 (E.D.N.Y. Apr. 9, 2014) (collecting cases).

Here, plaintiff fails to assert that he has made a valid FOIA request to defendant. He states only that he sent multiple "letters" and then alleges, in conclusory terms, that defendant has "repeatedly denied Freedom of Information requests, most recently in the September 13, 2018 letter stating they have no information" concerning plaintiff. Compl. ¶ 5. Plaintiff "does not specify what documents he requested, nor has he indicated whether the requested documents are 'agency records' which were improperly withheld." *Friedman v. United States*, 2003 WL 1460525, at *8 (S.D.N.Y. Mar. 18, 2003), *report and recommendation adopted,* 2003 WL 22846039 (S.D.N.Y. Dec. 1, 2003). Indeed, "there is no evidence" in the complaint suggesting that he "successfully communicated [his] request to" the United States Attorney in this District "in the first instance, let alone exhausted [his] administrative remedies" with that Office prior to

filing suit. *Dennis v. United States,* 2011 WL 344760, at *2 (E.D.N.Y. Jan. 31, 2011) (dismissing FOIA claim pursuant to Fed. R. Civ. P. 12(b)(6)).

In what may have been an effort to cure these deficiencies, plaintiff's opposition papers include what he characterizes as a "pile of emails and letters Plaintiff sent to The Department of Justice and the U.S. Attorney repeatedly asking to furnish information." Opp. Mem. at 21. The Court may consider those materials on this motion. *Blount v. Moccia*, 2017 WL 5634680, at *1 n.3 (S.D.N.Y. Nov. 21, 2017) (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Sofia v. Esposito,* 2018 WL 1755484, at *2 (S.D.N.Y. Apr. 10, 2018) (same). The attachments consist of twenty-five pages of correspondence between plaintiff and (i) the Criminal and Civil Rights Divisions of the Department of Justice, (ii) the Federal Bureau of Investigation, (iii) the New York State Office of the Inspector General's Records Access Officer, and (iv) the Office of Government Information Services. Opp. Mem. Ex. M. None of the attached documents reflects a valid FOIA request submitted to defendant or to the Executive Office for United States Attorneys (EOUSA), which processes requests for the 94 United States Attorney's Offices around the country.[4] I therefore recommend that plaintiff's FOIA claim be dismissed, pursuant to Rule 12(b)(6), with prejudice.

---

[4]   *See* Offices of the United States Attorneys, "Making a FOIA Request," https://www.justice.gov/usao/resources/making-foia-request (last visited August 2, 2019). In connection with his motion to dismiss, defendant submitted an affidavit from Darian Hodge, the FOIA "point of contact in the United States Attorney's Office for the Southern District of New York." (Dkt. No. 11.) Hodge attests that the Office itself received no FOIA requests from plaintiff, and that the EOUSA received four emails from plaintiff, none of which contained a valid and complete FOIA request. Hodge Decl. ¶ 5-6; *see also* Def. Mem. at 10-11 (detailing the deficiencies in plaintiff's emails). Were the Court to consider that affidavit, it would serve as an independent basis to dismiss plaintiff's FOIA claim. *See Taggart v. Office of the Inspector Gen.,* 2011 WL 13128214, at *12 (S.D.N.Y. Sept. 22, 2011) (dismissing FOIA claim against EOUSA

### C.      This Action Violates the February 3, 2017 Injunction

This action is also barred – in its entirety – by the February 3, 2017 injunction, issued in *Brady v. Goldman*. That injunction prohibited plaintiff from "filing new actions in the Southern District of New York that relate in any way to the cooperative's air rights appurtenant to his cooperative unit at 450 West 31st Street, New York, New York, or the conduct of any attorney, judicial officer, government official, or other third party in relation to such rights." *Brady v. Goldman,* 2017 WL 496083, at *2.

In a declaration dated October 5, 2018, plaintiff argues that this action cannot be barred by the *Brady v. Goldman* injunction because (a) "the filing injunction does not prevent and cannot be used to prevent the protection of a contract that has been rewritten and replaced in order to void its rights," and a "complaint seeking a mandatory injunction to compel [defendant] to probe this crime is not a 'new action' pursuant to the filing injunction," (b) "the *IGS Realty* case does not pertain to the 'the air rights appurtenant to James H. Brady's 12th floor roof unit apartment,'" and (c) the injunction in *Brady v. Goldman* "cannot be used to prevent the victim of a crime from obtaining legally-available information under the Freedom of Information Act." Brady Decl. dated Oct. 5, 2018 (Dkt. No. 5), at 3, 8.

I disagree. As in *Brady v. DiFiore*, this action "squarely falls among those types of actions that Judge Daniels, in *Brady* . . . specifically enjoined Plaintiff from filing without obtaining the Court's leave," No. 19-CV-4380-ER (S.D.N.Y. May 22, 2019), ECF No. 4 at 2, because it "relate[s]" to "the cooperative's air rights appurtenant to his cooperative unit at 450 West 31st Street, New York, New York" and "the conduct of [a] government official . . . in

---

based on the affidavit of a representative of the EOUSA stating that his search revealed "no record of a FOIA[] request made by" a plaintiff), *aff'd sub nom. Taggart v. Office of Inspector Gen. (OIG),* 530 F. App'x 17 (2d Cir. 2013).

relation to such rights." *Brady v. Goldman,* 2017 WL 496083, at *2. Moreover, by its own terms, the injunction is to be "broadly construed to bar the filing without leave of this Court of any case, against any defendant that has as a factual predicate the cooperative's air rights appurtenant to Plaintiff's penthouse unit, or any of the collateral actions that have arisen from it." *Id*. The injunction extends to the entire action – including plaintiff's claims based on *IGS Realty* and FOIA – because it bars any "new actions," not just any "new claims," relating "in any way" to the air rights dispute. Therefore, whatever other causes of action plaintiff has attached to his grievances regarding the air rights dispute, this lawsuit was brought in violation of the injunction in *Brady v. Goldman* and should be dismissed in its entirety, with prejudice, on that basis.

## III.    CONCLUSION

For the reasons stated above, I respectfully recommend that this action be DISMISSED WITH PREJUDICE.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to plaintiff.

Dated: New York, New York
        August 2, 2019

**BARBARA MOSES**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Valerie E. Caproni at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Caproni. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

14